UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Rakim Brown, | ) | C/A No. 9:25-cv-12976-JFA-MHC |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Warden Mr. Graham, | ) | |
| *Warden (FCI Williamsburg)*, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Petitioner Rakim Brown ("Petitioner"), a federal inmate currently incarcerated at Federal Correctional Institution ("FCI") Williamsburg in Salters, South Carolina, petitions the court for a writ of habeas corpus under 28 U.S.C. § 2241. ECF No. 1. Respondent filed a Motion to Dismiss or, in the Alternative, for Summary Judgment ("Motion"), arguing that the Petition should be dismissed because Petitioner's claims are without merit. ECF No. 12. Petitioner filed a Response in Opposition, ECF No. 15, and Respondent filed a Reply, ECF No. 16. The Motion is ripe for review.

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(c) (D.S.C.), all pretrial proceedings in this matter have been assigned to the undersigned. Because the Motion is dispositive, this Report and Recommendation is entered for review by the District Judge. For the reasons that follow, the undersigned recommends that Respondent's Motion be granted and that the Petition be dismissed.

## I.     BACKGROUND

Petitioner filed this action pursuant to 28 U.S.C. § 2241, challenging a disciplinary action that he received at FCI Williamsburg in June 2024, on Incident Report Number 3945524, charging him with violation of Code 115, Destroy/Dispose Item-Search. ECF Nos. 1, 1-1 at 16. Specifically,

Petitioner asserts that his due process rights were violated in the disciplinary process because: (1) he denies he committed the charged violation; (2) he was not permitted to have witnesses; and (3) "the DHO's decision detailed in the DHO Report was partial and based on incomplete or false information." *See* ECF No. 1 at 10–13. Petitioner seeks to have the disciplinary action expunged and his good conduct time and non-vested good conduct time restored. *See id.* at 10, 13.

### A. Overview of the BOP Inmate Disciplinary Process

The Bureau of Prisons ("BOP") has administrative and rulemaking authority over federal prisons pursuant to Congressional delegation. *See* 18 U.S.C. § 4001 *et. seq*. Among the BOP's statutory duties is to "provide for the protection, instruction, and discipline of all persons charged with or convicted of offenses against the United States[.]" 18 U.S.C. § 4042(a)(3). The BOP's Inmate Discipline Program and its associated administrative appeal process are set out in the Code of Federal Regulations. *See* 28 C.F.R. §§ 541.1 *et. seq.*, 542.10 *et. seq*.

According to these rules, when BOP staff have a reasonable belief that an inmate has violated a BOP regulation, staff prepare an incident report. *See* 28 C.F.R. § 541.5(a). Staff provide the inmate with a written copy of the charges against him, ordinarily within twenty-four hours of the time staff became aware of the inmate's involvement in the incident. *See id*.

An investigating officer informs the inmate of the charges and asks for the inmate's statement concerning the incident. *See* 28 C.F.R. § 541.5(b). The officer advises the inmate of the right to remain silent, informing him that his silence may be used to draw an adverse inference against him. *See* 28 C.F.R. § 541.5(b)(1)(B). The officer further explains that the inmate's silence alone may not be used to support a finding that the inmate committed a prohibited act. *Id*.

A designated Unit Discipline Committee ("UDC") will review the incident report once the staff investigation is complete. 28 C.F.R. § 541.7. A UDC ordinarily consists of two or more staff

members but will not include victims, witnesses, investigators, or other staff members "significantly involved in the incident." 28 C.F.R. § 541.7(b). The UDC ordinarily will review the incident report within five working days after it is issued, not counting the day the incident report is issued, federal holidays, or weekends. 28 C.F.R. § 541.7(c). The inmate is permitted to appear in person or electronically at the UDC review of the incident report, except during deliberations, or when institutional security would be jeopardized by the inmate's presence. *See* 28 C.F.R. § 541.7(d). The inmate is entitled to make a statement and to present documentary evidence on his own behalf at the UDC review. 28 C.F.R. § 541.7(e). After considering all the evidence presented at the review, the UDC makes a decision based on at least some facts, and if there is conflicting evidence, based on the greater weight of the evidence. *Id.*

The UDC either finds the inmate committed the prohibited act as charged and/or a similar prohibited act if reflected in the incident report, finds the inmate did not commit the prohibited act charged, or refers the case to the DHO for further proceedings. *See* 28 C.F.R. § 541.7(a). When an alleged violation of the BOP rules is serious and warrants consideration for other than minor sanctions, the UDC refers the charges to the DHO for further proceedings. *See* 28 C.F.R. § 541.7 (a)(4).

When charges are referred to the DHO, the UDC advises the inmate of the rights afforded at the hearing before the DHO. *See* 28 C.F.R. § 541.7(g). An inmate may request a staff representative and have witnesses at the DHO hearing. *See* 28 C.F.R. § 541.8(d) & (f). If the inmate desires, a staff representative will be available to assist the inmate and help the inmate understand the charges and potential consequences. *See* 28 C.F.R. § 541.8(d). The staff representative may also assist the inmate by speaking with and scheduling witnesses, obtaining written statements, and otherwise helping the inmate prepare evidence for presentation at the DHO hearing. *Id.*

At the hearing before the DHO, the inmate is entitled to make a statement and to present documentary evidence on his own behalf. 28 C.F.R. § 541.8(f). The inmate may also request witnesses to testify on the inmate's behalf, provided the calling of witnesses does not jeopardize or threaten institutional security, or the witnesses would present repetitive evidence. *See* 28 C.F.R. § 541.8(f)(3).

The DHO considers all evidence presented at the hearing and bases his decision "on at least some facts, and if there is conflicting evidence, on the greater weight of the evidence." 28 C.F.R. § 541.8(f). The DHO determines the inmate either committed the prohibited act charged and/or a similar prohibited act as described in the incident report, finds the inmate did not commit the prohibited act charged, or refers the incident report back for further investigation, review, and disposition. *See* 28 C.F.R. § 541.8(a)(1)–(3).

The DHO prepares a record of the proceedings, which does not need to be verbatim. *See* 28 C.F.R. § 541.8(h). The record of the proceedings documents whether the inmate was advised of his right, the evidence relied on by the DHO, the DHO's decision, the sanction imposed by the DHO, and the reasons for any sanction imposed. *See id.*

## B.  Factual Background

At 10:10 a.m. on June 1, 2024, FCI Williamsburg staff member J. McDaniel wrote Petitioner an incident report for violating Prohibited Act Code 108, Possessing a Hazardous Tool (Aiding) and Prohibited Act Code 198, Interfering w/ Staff-Greatest. ECF No. 1-1 at 2, Incident Report No. 3945524. In the Incident Report, the reporting officer included the following description of the incident:

> On June 1, 2024, approximately 9:15 a.m. I, ofc. J. McDaniel[,] was conducting a round in the 3B-Lower unit. As I approached cell 210, according to sentry is assigned to inmate Michael Smith [redacted inmate number] and inmate Jameel Zimmerman [redacted inmate number], I observe[d] inmate Smith on the top bunk

4

strolling through a black smart cellular device. I gave inmate Smith a directive to surrender the device and to submit to a pat search. Inmate Smith began to fumble around with the device, making the device fall down his left leg. As I reached down to confiscate the device, inmate Smith step forward and swiftly reach down his left leg to conceal the device. Inmate Smith then reached over his head and then my head, giving the device to Inmate [Petitioner]. I then gave inmate [Petitioner] a directive to move from behind me, give up the cellular device, and to surrender to a pat search. Assistance was called as inmate [Petitioner] continued to walk around the top tier, discarding of the cellular device.

ECF No. 1-1 at 2 § 11. Within the hour, at 10:58 a.m. that same day, the reporting officer re-wrote the Incident Report, keeping the same narrative but changing the incident charged to a violation of Prohibited Act Code 115, Destroy/Dispose Item-Search. ECF No. 12-1 at 3 § 11. Both the original and the re-written incident reports were delivered to Petitioner on June 1, 2024, at 11:14 a.m. *See* ECF No. 1-1 at 2 §§ 14–16; ECF No. 12-1 at 3 §§ 14–16.

The Lieutenant tasked with investigating the incident advised Petitioner of his rights on the same day and read the incident report to him. ECF No. 12-1 at 5 §§ 23–24. At that time, the Lieutenant asked Petitioner if the statements in the Incident Report's narrative section were true, and Petitioner stated, "[T]hat's not what happen like that. That makes no sense." *Id.* at § 24. When asked whether he would like to make any statements on his behalf, Petitioner stated that he wanted the video footage reviewed. *Id.* Petitioner did not request any witnesses or a staff representative at that time. *Id.*

A UDC hearing was held on June 5, 2024. *Id.* at 4 § 21. During the UDC hearing, Petitioner stated, "I don't feel I can't be fairly heard by Ms. Werts, because I just wrote her up. Can I be heard by another DHO?" *Id.* at § 17. The UDC forwarded the incident report to the DHO for further processing. *Id.* at §§ 18–19.

Petitioner was provided a "Notice of Discipline Hearing Before the (DHO)" form on June 5, 2024. *See* ECF No. 12-1 at 7, Notice of Discipline Hearing Before the (DHO) Form. Petitioner

signed the form on the same day, indicating that he did not request a staff representative and

naming only inmate Zimmerman as a witness. *Id.*; *see* ECF No. 19 at 11 (unredacted copy). On

the same day, Petitioner was also provided a form advising him of his rights at the DHO hearing,

which he acknowledged with his signature. *See* ECF No. 12-1 at 9, Inmate Rights at Discipline

Hearing Form.

On June 20, 2024, the DHO held a hearing. See ECF No. 12-1 at 11–16, DHO Report.

Petitioner stated that he understood his rights before the DHO and confirmed that he had received

a copy of the incident report. *Id.* at §§ I and V. Petitioner did not request a staff representative. *Id.*

at §§ II, III, and V.

On the DHO Report, the box was checked indicating that Petitioner waived the right to

witnesses at the hearing; however, an inmate witness statement was obtained and considered by

the DHO. *Compare id.* at § III.C.1 *with* §§ III.C.4 and V. The handwritten witness statement from

inmate Zimmerman, which was transcribed into the DHO Report and attached to it, stated as

follows:

> On the day [Petitioner] was taken to the SHU I don't remember him doing anything
> to get himself there. At the time of the incident with Mr. Smith & Ms. McDaniel,
> [Petitioner] walked by asking if everything was ok & Ms. McDaniel said something
> [a]bout him having ties with whatever was going on. That's all I remember
> [Petitioner] being around for so I['']m not sure why he is in the SHU at this time.

ECF No. 12-1 at 18 (copy of witness statement); ECF No. 19 at 13; *see* ECF No. 1-1 at 12, DHO

Report § III.C.4 ("You requested Inmate Zimmerman [redacted inmate number] as a witness.

Inmate Zimmerman provided a written statement[.]"). The DHO indicated that she "considered

the statements provided by [Petitioner's] witness." ECF No. 12-1 at 13–14 § V.

Petitioner was provided an opportunity to make a statement at the DHO hearing and stated

the following:

> I was coming out of my cell, and I observed the officer searching Smith's under

> clothes. He was asking the officer what she was doing. Staff tell us to get another staff member and senior mentor. I went to get a mentor and then Jennings came. Ms. Ellory came and told me to go downstairs. I told them I didn't know what happened. I never went in a cell; I never went to a trashcan.

ECF No. 1-1 at 3–4 § III.B.

In addition to the incident report and investigation, the DHO considered the witness statement, video footage of the incident, and Petitioner's disciplinary history as documentary evidence. *Id.* at 4–6 §§ III.D and V. The DHO described the video evidence as follows:

> The video footage displays the officer enter Inmate Smith's cell, multiple inmates are then seen exiting the cell in front of the officer and appear to be distracting her. The officer is then seen following you [Petitioner], appears to be telling you to stop and you are observed with an electronic device in your hand. You then enter the day room.

*Id.* at 12 § III.D.

The DHO found that Petitioner committed the prohibited act as charged (Code 115, Destroy/Dispose Item-Search). *Id.* at 5–6 §§ IV and V. The DHO set out the specific evidence relied upon, including the reporting officer's written report, the video footage, and Petitioner's disciplinary record. *Id.* at § V. The DHO sanctioned Petitioner to the disallowance of 41 days good-conduct time ("GCT"), 75 days non-vested good conduct time ("NVGCT"), 21 days disciplinary segregation ("DS"), 6 months loss of commissary privileges, and 9 months loss of telephone privileges. *Id.* at § VI. The DHO explained the reasons for the sanctions imposed, which included the severity of the offense and the serious threat posed by cell phones in the institution. *Id.* at 15 § VII. The DHO Report was completed on July 2, 2024, and a copy was provided to Petitioner on July 3, 2024. *Id.* at 16 § IX.

## II.     LEGAL STANDARDS

### A.  Summary Judgment Standard[1]

Summary judgment is appropriate if a party "shows there is no genuine dispute as to any issue of material fact" and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Under the framework established in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the party seeking summary judgment shoulders the initial burden of demonstrating to the Court that there is no genuine issue of material fact. *Id*. at 323. Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id*. at 324.

Under this standard, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, although the Court views all the underlying facts and inferences in the record in the light most favorable to the non-moving party, the non-moving "party nonetheless must offer some 'concrete evidence from which a reasonable juror could return a verdict in his [or her] favor.'" *Williams v. Genex Servs., LLC*, 809 F.3d 103, 109 (4th Cir. 2015) (quoting *Anderson*, 477 U.S. at 256). That is to say, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory or speculative allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002). "Only disputes over facts that might

---

[1] Respondent moved under Rules 12(b)(6) and 56 of the Federal Rules of Civil Procedure. ECF No. 12. Because the parties submitted, and the undersigned considered, matters outside of the Petition, Respondent's Motion has been treated as one for summary judgment. *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").

affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. To survive summary judgment, the non-movant must provide evidence of every element essential to his action on which he will bear the burden of proving at a trial on the merits. *Celotex Corp.*, 477 U.S. at 322.

### B. Habeas Corpus

Under established local procedure in this judicial district, a careful review has been made of this Petition pursuant to the Rules Governing Section 2254 Proceedings for the United States District Court,[2] the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), and other habeas corpus statutes. Pro se complaints are held to a less stringent standard than those drafted by attorneys. *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). A federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Habeas corpus proceedings are the proper mechanism for a prisoner to challenge the legality or duration of his custody. *See Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). The primary means of attacking the validity of a federal conviction and sentence is through a motion pursuant to 28 U.S.C. § 2255, while a petition for habeas corpus under § 2241 is the proper method to challenge the computation or execution of a federal sentence. *See United States v. Little*, 392 F.3d 671, 678–79 (4th Cir. 2004).

A petitioner may bring a petition for a writ of habeas corpus under § 2241 if he is "attack[ing] the computation and execution of the sentence rather than the sentence itself." *United States v. Miller*, 871 F.2d 488, 490 (4th Cir. 1989) (per curiam); *see also Diaz v. Warden, FCI*

---

[2] The Rules Governing Section 2254 are applicable to habeas actions brought under § 2241. *See* Rule 1(b), Rules Governing § 2254 Cases, 28 U.S.C.A. foll. § 2254.

*Edgefield*, No. 4:17-cv-00093-RBH, 2017 WL 2985974, at *2 (D.S.C. July 13, 2017) (noting a § 2241 petition "is the proper means for a federal prisoner to challenge the BOP's sentencing calculations"). A § 2241 petition challenging the execution of a federal prisoner's sentence generally addresses "such matters as the administration of parole, computation of a prisoner's sentence by prison officials, prison disciplinary actions, prison transfers, type of detention[,] and prison conditions." *Jiminian v. Nash*, 245 F.3d 144, 146 (2d Cir. 2001); *see also Manigault v. Lamanna*, No. 8:06-047-JFA-BHH, 2006 WL 1328780, at *1 (D.S.C. May 11, 2006) ("A motion pursuant to § 2241 generally challenges the execution of a federal prisoner's sentence, such as parole matters, computation of sentence by prison officials, prison disciplinary actions, and prison transfers."). A § 2241 petition must be brought against the warden of the facility where the prisoner is being held, *Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004), and "in the district of confinement rather than in the sentencing court," *Miller*, 871 F.2d at 490. *See also* 28 U.S.C. § 2242.

## III.   DISCUSSION

Petitioner alleges that his due process rights were violated in the disciplinary process because: (1) he denies he committed the charged violations; (2) he was not permitted to have witnesses; and (3) "the DHO's decision detailed in the DHO Report was partial and based on incomplete or false information." *See* ECF No. 1 at 10–13.

It is well established that a prisoner's good conduct time is a protected liberty interest under the Fifth Amendment. *See Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). Prisoners are therefore entitled to "those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the . . . right is not arbitrarily abrogated." *Id*. Specifically, due process requires that a prisoner subject to a loss of good conduct time through disciplinary sanctions be afforded the following: (1) written notice of the disciplinary charges at least twenty-

10

four hours in advance of the disciplinary hearing; (2) a neutral and detached hearing body; (3) an opportunity for non-attorney representation if the inmate is illiterate or the disciplinary hearing is complex; (4) the opportunity to call witnesses and present documentary evidence (unless unduly hazardous to institutional safety and correctional goals); and (5) a written statement provided by the factfinders outlining the evidence relied upon and the reasons for the chosen course of disciplinary action. *Id.* at 563–71; *see also Tyler v. Hooks*, 945 F.3d 159, 168 (4th Cir. 2019); *Crawley v. Wilson*, No. 2:11-cv-542, 2012 WL 2505118, at *4 (E.D. Va. May 16, 2012).

In addition, the BOP's findings must be "supported by some evidence in the record." *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985). "Revocation of good time credits is not comparable to a criminal conviction, and neither the amount of evidence necessary to support such a conviction nor any other standard greater than some evidence applies in this context." *Id.* at 456 (internal citations omitted). Thus, the "fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact." *Id.*

### A. The *Wolff* Requirements Were Satisfied

A review of the disciplinary action reveals that the *Wolff* requirements were satisfied. First, Petitioner received written notice of the charge at least twenty-four hours in advance of the DHO hearing, as Petitioner received a copy of the incident report on June 1, 2024, and the DHO hearing was held on June 20, 2024. *See* ECF No. 1-1 at 3 at § I. Second, Petitioner had a neutral and detached hearing provided by the DHO, as evidenced by the DHO report. *See* ECF No. 1-1 at 3–8. Third, Petitioner was advised of his right to a staff representative, but Petitioner waived that right. *See Id.* at §§ II and V. Fourth, as evidenced by the DHO Report delivered to Petitioner on July 3, 2024, Petitioner was provided a written statement documenting the specific evidence relied

11

upon and the basis for the DHO's finding, the action taken by the DHO, and the reasons for the action. *See id.*

As to the remaining *Wolff* requirement, Petitioner does not dispute that he was advised of his rights to call witnesses and present documentary evidence, nor does he dispute that he was provided the opportunity to make a statement on his own behalf at the DHO hearing, which he did. *See* ECF No. 12-1 at 9, 11–12 § III; *see* ECF No. 15 at 2. However, in his Petition, Petitioner asserts that he "told the DHO that he would like the DHO [to] hear the testimony of inmates Zimmerman, Brogdon and S.I.S. officer Oberdeen," and he contends that had all three witnesses been allowed, their evidence "would have changed or reversed the DHO's decision." ECF No. 1 at 13. In his Response to the Motion for Summary Judgment, Petitioner argues that he "was not allowed to call all his witnesses even though[,] . . . during the DHO hearing, Petitioner expressed his interest to have SIS officer Mr. Oberdeen as a witness." ECF No. 15 at 1–2. According to Petitioner, Officer Oberdeen "reviewed the camera footage in Petitioner's Housing Unit [and] he did not see a cell phone, but he saw Petitioner's tablet instead." *Id.* at 2. Petitioner contends that the video does not prove or demonstrate that the electronic device was a cell phone and that the DHO's decision to exclude Mr. Oberdeen's testimony prejudiced him. *Id.* at 2–3. In his Petition, Petitioner similarly alleges that the video evidence from the incident "would exonerate [P]etitioner." ECF No. 1 at 12.

Upon review of all the evidence in the record, the undersigned finds that Petitioner has not demonstrated that he was denied the opportunity to call witnesses or present evidence at the DHO hearing in violation of his due process rights.

First, the record shows that Petitioner requested only one witness, inmate Zimmerman. *See* ECF No. 12-1 at 7; ECF No. 19 at 11. The DHO Report indicates that inmate Zimmerman was

unavailable but that he submitted a written statement that was incorporated into the DHO Report and considered by the DHO. *See* ECF No. 1 at 4–6 at §§ III.C.4 and V; *see also* ECF No. 12-1 at 18. To the extent Petitioner contends that he was denied witnesses because Zimmerman's written statement was considered in lieu of live testimony, his argument is without merit. *See Brown v. Braxton*, 373 F.3d 501, 508 (4th Cir. 2004) (concluding that the failure to permit live testimony was harmless where the witness's written statement was considered by the decisionmaker, and the plaintiff did not demonstrate that he was harmed by the witness's "testifying in writing rather than in person").

As to Petitioner's assertion that he informed the DHO that he wanted to call Brogdon and S.I.S. officer Oberdeen, the documentary evidence does not support this assertion. Specifically, on the "Notice of Discipline Hearing Before the (DHO)" form signed by Petitioner, he named only inmate Zimmerman as a witness. *See* ECF No. 12-1 at 7; ECF No. 19 at 11. Second, the DHO Report does not demonstrate that Petitioner requested any other witnesses. *See* ECF No. 1-1 at 3–6 §§ III, V. Third, Petitioner's initial appeal of the DHO decision to the Regional Office does not mention Brogdon or Oberdeen or otherwise assert that Petitioner requested but was denied the opportunity to call these two individuals as witnesses. ECF No. 1-1 at 11–12. Fourth, Petitioner's appeal to the Central Office (following the Regional Office's denial of his appeal) likewise does not mention Brogdon or assert that Petitioner requested to call witnesses but was denied. *Id.* at 15–16. Petitioner does mention Oberdeen's name in the Central Office appeal, but only in his recitation of the facts and not in any way arguing that he requested to call Oberdeen as a witness. *See id.* at 16 ("Once we got to the Lt office where C.O. Jennings, Lt. Van Wyck, (S.I.S) Oberdeen reviewed the camera and sent us back to the unit because the never saw a wireless device."). On this record, Petitioner cannot demonstrate that he was denied the right to call witnesses.

Finally, as to Petitioner's assertion that the video footage from the incident "would exonerate" him, ECF No. 1 at 12, the record evidence shows that Petitioner requested that the video footage be reviewed, ECF No. 12-1 at 5 § 24, and that the DHO did, in fact, review and consider the video footage. *See* ECF No. 1-1 at 4–6 §§ III.D and V; *see also Lennear v. Wilson*, 937 F.3d 257, 274 (4th Cir. 2019) (explaining that "inmates . . . have a qualified procedural due process right in disciplinary proceedings to access and compel official consideration of video surveillance evidence"). Although Petitioner disputes the conclusions that can be drawn from the video, that argument goes to the weight of that evidence, not his due process rights under *Wolff* or as extended by the Fourth Circuit in *Lennear*. Here, there is no evidence in the record indicating that Petitioner requested to review any video evidence, nor is there any indication or allegation in his Petition that he was unable to do so. The DHO reviewed and considered the video, as requested by Petitioner; she simply reached a different conclusion than Petitioner believes should have been reached.

Based on the foregoing, Petitioner's *Wolff* rights were satisfied.

**B.  The DHO's Decision Satisfied the "Some Evidence" Standard**

In his Petition, Petitioner denies having a cell phone and challenges the DHO's decision, arguing that it was based on incomplete or false information. ECF No. 1 at 13. In his Response to the Motion for Summary Judgment, he similarly argues that the DHO's decision was based on insufficient evidence and that the video footage should exonerate him. ECF No. 15 at 2.

Upon review, the undersigned finds that the records from Petitioner's disciplinary proceedings show that the DHO's decision satisfies the requisite "some evidence" standard necessary to satisfy the requirements of due process. *See Hill*, 472 U.S. at 455 ("We hold that the requirements of due process are satisfied if some evidence supports the decision by the prison

14

disciplinary board to revoke good time credits. This standard is met if there was some evidence from which the conclusion of the administrative tribunal could be deduced." (citation and quotation marks omitted)); *Tyler*, 945 F.3d at 171 ("[T]he 'some evidence' standard is extremely broad in scope and presents a very low burden for prison officials to meet.").

As an initial matter, "a claim of actual innocence is not a basis for federal habeas corpus relief." *Johnson v. Warden, FCI Williamsburg*, No. CA 1:13-3347-JFA-SVH, 2014 WL 4825926, at *8 (D.S.C. Sept. 24, 2014), *aff'd sub nom. Johnson v. Cruz*, 597 F. App'x 161 (4th Cir. 2015); *see Beltran-Estrada v. Dunbar*, No. 2:22-CV-02467-DCN-MGB, 2023 WL 11921417, at *4 (D.S.C. June 16, 2023) (same), *report and recommendation adopted,* No. 2:22-CV-2467 DCN, 2023 WL 11921415 (D.S.C. July 17, 2023).

Moreover, Section V of the DHO Report explains that the DHO's decision took into consideration the officer's written incident report; the video footage; Petitioner's statements to the investigating Lieutenant, the UDC, and the DHO; and the witness statement from inmate Zimmerman. ECF No. 1-1 at 5–6 § V. However, the DHO ultimately found that the greater weight of the evidence provided in the officer's report, video footage, and Petitioner's discipline record supported the finding that Petitioner committed the act as charged. *Id.* It is clear from the DHO Report that the DHO's decision was based on documentary evidence, including a video showing Petitioner "with an electronic device in [his] hand[,]" as well as the report of the officer. ECF No. 1-1 at 5–6 § V ("Although you denied the charge against you and stated you didn't know what happened[,] the video footage clearly supports the events reported by the officer."). Based on the foregoing, there is "some evidence" in the record supporting the DHO's determinations that Petitioner committed the offense as charged and that sanctions were warranted.

#### IV.    CONCLUSION

For the reasons set forth above, it is **RECOMMENDED** that Respondent's Motion for Summary Judgment (ECF No. 12) be **GRANTED** and that this Petition be **DISMISSED**.

_____
Molly H. Cherry
United States Magistrate Judge

June 29, 2026
Charleston, South Carolina

**The parties are directed to the important notice on the next page.**

16

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).